Filed 4/12/22  P. v. Navarez CA1/4
(opinion on rehearing)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCOS NAVAREZ,<br><br>        Defendant and Appellant. | A164260<br><br>(Tulare County<br>Super. Ct. No. VCF325028T) |

Defendant Marcos Navarez appeals a judgment convicting him of various charges arising out of his participation in a conspiracy to murder a rival gang member, including conspiracy to commit murder, conspiracy to receive a stolen vehicle, unlawful driving and taking a vehicle, participating in a criminal street gang conspiracy and participation in a criminal street gang. Defendant contends correctly that (1) there is insufficient evidence to convict him of participating in a criminal street gang conspiracy (Pen. Code,[1] § 182.5) and (2) his conviction for conspiring to receive a stolen vehicle (§§ 182, 496d) must be reversed because the agreement regarding the stolen vehicle was part of a single conspiracy to murder the rival gang member. As a result, defendant's convictions on counts 2 and 4 must be reversed. In addition, recently enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.)

---

[1] All statutory references are to the Penal Code unless otherwise noted.

(Assembly Bill 333), which increased the evidentiary requirements under the criminal gang statute (§ 186.22) requires reversal of defendant's conviction for participation in a criminal street gang and the true findings on the gang-related enhancements alleged in connection with the conspiracy to commit murder and unlawful driving counts.[2] We reject defendant's additional argument that the jury was not properly instructed on conspiracy to commit murder (§§ 182, subd. (a)(1), 187). As a result of the partial reversal of defendant's convictions, the matter must be remanded for resentencing. Defendant's arguments asserted on appeal relating to his sentence can be considered by the trial court at that time. We affirm the judgment in all other respects.

## Background

This prosecution was the culmination of a multi-agency law enforcement operation in 2015 which focused on the Norteño criminal street gang in Tulare County. The investigation involved wiretaps of about 34 telephones and live surveillance of suspects. The initial complaint charged approximately 80 individuals with 157 gang-related crimes. The defendants were subsequently divided into six groups.

Defendant was charged by information with five counts:[3] conspiracy to commit murder (count 1; §§ 182, subd. (a)(1), 187); conspiracy to receive a stolen vehicle (count 2; §§ 182, subd. (a)(1), 496d); unlawful driving and taking a vehicle (count 3; Veh. Code, § 10851); participating in a criminal

---

[2] Defendant's argument regarding Assembly Bill 333 was raised for the first time by petition for rehearing. We granted rehearing and now, after providing the Attorney General with an opportunity to respond, reissue our opinion.

[3] Defendant was charged with two coconspirators, including co-defendant Robert Duran with whom he went to trial.

street gang conspiracy (count 4; § 182.5); and participating in a criminal street gang (count 5; § 186.22, subd. (a).) Count 1 included special allegations that the crime was punishable by life imprisonment (§ 186.22, subd. (b)(5)), and that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)).[4] Counts 2 and 3 included the special allegation that each crime was committed for the benefit of and in association with a criminal street gang (§ 186.22, subd. (b)(1)(A)). Counts 4 and 5 specially alleged that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)).

At trial, evidence was presented that defendant conspired with other Norteño gang members to murder a rival Sureño gang member living at a specific location in Porterville. A condensed summary of the extensive evidence establishing defendant's participation in the conspiracy is as follows[5]:

The Norteño gang divided Tulare County into three sections: north, south, and central. During the relevant time period, Emanuel Avalos was acting as the gang leader overseeing the south Tulare county area. Duran was responsible for gang communications and activity in Porterville, a town in the south county area. Porterville was also divided into three subsections: west side, east side, and central. Defendant served as the "squad leader" for east side Porterville.

---

[4] At trial, the pleading was amended to conform to proof with regard to the weapon use allegation attached to count 1 to allege a principal used a deadly or dangerous weapon (§ 12022, subd. (a)(l)).

[5] Although at trial defendant contested some of the facts set forth *post* and the inferences drawn by the prosecution, his appeal proceeds on the assumption that these facts and inferences were established by the evidence, as reflected by the verdict. Because defendant does not challenge the jury's finding that he was an active participant in a criminal street gang, we do not detail the substantial evidence that supports that finding.

In August 2015, law enforcement intercepted a text message from Avalos to Duran that instructed Duran to have the "east side" scout a location to identify a specific target for a "hit." After various communications between Avalos and Duran, Avalos confirmed that "we got to get a body."

Shortly before the day of the intended murder, defendant was asked to fill in for Duran while he was at work. Avalos and defendant communicated by text and phone several times discussing the target and the intended shooting. Avalos also contacted Eddie Mena to obtain a stolen vehicle. Mena said he had one, and Avalos told Mena he would have someone from east side Porterville pick up the vehicle from a certain cemetery. Avalos then texted defendant, saying that if he needed a stolen vehicle for the shooting, he had one ready for him. Defendant responded that he did need one, and Avalos, defendant and Mena coordinated the pick-up of the car from the cemetery.

On September 3, 2015, officers observed defendant and other gang members retrieve the stolen car from the cemetery. Defendant, who was driving a white vehicle, followed the stolen vehicle to a house in Porterville. Defendant, still driving the white vehicle, briefly scouted the location of the intended shooting. Upon his return, the stolen vehicle headed towards the intended shooting location but was stopped by police before it reached the target's home. Two of the vehicle's three occupants were arrested.

The jury convicted defendant on all counts and found true all the special allegations. The court sentenced defendant to a determinate term of seven years in state prison followed by an indeterminate term of 25 years to life.

**Discussion**

1. *Conspiracy to Receive a Stolen Vehicle*

Defendant contends his conviction for conspiracy to receive a stolen vehicle must be reversed because the agreement to use the stolen vehicle was part of the plan to commit murder and did not constitute a separate conspiracy. The Attorney General disagrees, arguing that "[t]he agreements are properly viewed as separate conspiracies because they involved different conspirators, different objectives, and different victims."

"[T]he essence of the crime of conspiracy is the agreement, and thus it is the number of the agreements (not the number of the victims or number of statutes violated) that determine the number of the conspiracies." (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1669; see also *People v. Kopp* (2019) 38 Cal.App.5th 47, 84 ["[W]hen multiple crimes are committed, there may be one overall agreement to commit all of them, or multiple separate agreements."]; *People v. Lopez* (1994) 21 Cal.App.4th 1551, 1557 [" 'One agreement gives rise to only a single offense, despite any multiplicity of objects.' "].) " ' "Where two or more persons agree to commit a number of criminal acts, the test of whether a single conspiracy has been formed is whether the acts 'were tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result.' " [Citation.] "Relevant factors to consider in determining this issue include whether the crimes involved the same motives, were to occur in the same time and place and by the same means," and targeted a single or multiple victims.' [Citation.] ' "The test is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy. If so, there is but a single conspiracy." [Citation.]' [Citation.] ' "Performance of separate crimes or separate acts in furtherance of a

5

conspiracy is not inconsistent with a 'single overall agreement.' [Citation.] The general test also comprehends the existence of subgroups or subagreements." ' " (*People v. Kopp, supra*, 38 Cal.App.5th at p. 84.)

The evidence at trial established only one conspiracy. The evidence established that the sole reason for obtaining a stolen car was to commit the murder in a vehicle that could not be linked to the perpetrators. The gang members did not agree to steal a car, but to use for the killing a car that had been stolen. In closing argument, the prosecutor repeatedly stated that this was a case about a conspiracy between gang members to commit a murder. The prosecutor never differentiated the conspiracy to receive a stolen vehicle from the conspiracy to commit murder.[6] The prosecutor explained that for "gang operations like this you need a stolen vehicle. A stolen vehicle is what will cloak the gang members. If you go to kill someone, you don't want it traced back to a legitimate car." He later argued that getting the stolen car was "one of the precursors for getting this operation in motion" and that it had been specifically arranged for the commission of this crime. He explained, "This is the key vehicle, because the other vehicles, the Chevy Tahoe, the red vehicle, they weren't the stolen vehicles that had been specifically purchased -- not purchased, had not been arranged to have them come forward. Instead, they are legit vehicles, as far as we can tell. Once the Dodge Durango gets moving, that's the stolen vehicle. That's the vehicle the gang members can use for their hit." In rebuttal, when discussing the requirement for an overt act in furtherance of the conspiracy, the prosecutor

---

[6] The prosecutor's only reference to the second conspiracy charge came at the very end of his rebuttal when he stated, "I want to make one comment about the vehicle: We don't know, didn't steal the vehicle. That's not what he's charged with. He's charged with . . . conspiracy to receive stolen property, the vehicle, and charged with unlawful driving of a stolen vehicle."

again argued, "Once you have the overt acts, you have conspiracy to commit murder with the intent to kill. That's when it's there. [¶] By the time you get to September 3rd, when the Dodge Durango was already out, the overt acts have already occurred. They have gotten the stolen car from Porterville."

Contrary to the Attorney General's argument, the two agreements involved at least two of the same core gang members. Avalos and defendant agreed to commit a murder and Avalos and defendant arranged for a stolen car to be used in the murder. The fact that other co-conspirators were involved in the different phases of the plan does not mean that there were two separate conspiracies. The agreement between Avalos and defendant regarding the stolen car is properly viewed as a "subagreement." (See *People v. Kopp, supra*, 38 Cal.App.5th at p. 84.)

The objectives of the agreement to commit the murder and the subagreement to use a stolen vehicle were overlapping. The stolen car was intended to facilitate the murder by lessening the chances that the perpetrators would be identified. As the prosecutor argued, it was an essential "precursor" to setting the murder in motion.

The Attorney General's reliance on *People v. McLead* (1990) 225 Cal.App.3d 906 for the proposition that "committing a crime and getting away with it are distinct criminal objectives" is misplaced. In that case, the court held that the defendant was properly convicted of two conspiracies where he and his co-conspirators robbed a rival drug dealer and two of his associates, and then drove them to a rural area and shot them. (*Id.* at pp. 911-912, 920.) The court explained that the agreement to kill the two associates was formed after the agreement to rob and kill the rival drug dealer was set in motion. While the objective of the first agreement was the "elimination of a competitor to achieve financial gain," the second agreement

7

had the distinct objective of eliminating the associates as witnesses. (*Id.* at p. 920.) In the present case, in contrast, the agreement to use the stolen vehicle was but a step in the plan to commit the murder.

Finally, the Attorney General's argument that the two conspiracies had different victims is not persuasive. The Attorney General suggests that "[s]eparate victims suffered separate harm" from defendant's agreements. Although no evidence was presented at the trial regarding when or for what reason the car was stolen, at sentencing, the prosecutor indicated that the car was stolen the day before Avalos, Mena and defendant arranged for its use in the murder. The transcript of Avalos's conversation with Mena also establishes that Avalos asked if Mena had a car available for him to use, not that he asked Mena to steal a car for his use. Mena indicated that he had a car available. Accordingly, the Attorney General's suggestion that the victim of the stolen vehicle conspiracy was the owner of the car is not supported by the evidence. If the car had previously been stolen, its owner was not a victim of its use in connection with the planned murder.

As defendant notes, "Because the conspiracy to commit murder carries the greater punishment, the conviction in count 2 for conspiracy to commit receiving a stolen vehicle must be reversed." (See § 182, subd. (a).)

2. *Conspiracy to Commit Murder*

Defendant contends that the jury instructions failed to adequately explain the mental state necessary to find him guilty of conspiring to commit murder. We disagree.

In *People v. Cortez* (1998) 18 Cal.4th 1223, 1237, the Supreme Court held that "all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." The court explained that because the mental state required for conviction of conspiracy

8

to commit murder necessarily establishes premeditation and deliberation of the target offense of murder, the jury need not be expressly instructed on premeditation and deliberation. (*Id*. at pp. 1232, 1238-1239.) Instructions on the basic elements of murder, however, are "necessary to guide the jury in its determination of whether defendant harbored the requisite dual specific intent for conviction of conspiracy to commit murder." (*Id*. at p. 1239.) In that regard, the court found sufficient instructions that murder is " 'the unlawful killing of a human being . . . with malice aforethought,' " where malice is defined as the "intent to kill." (*Ibid*.)

Here, the jury was instructed, pursuant to CALCRIM No. 563 that to convict defendant of conspiracy to commit murder it must find that: "1. The defendant intended to agree and did agree with co-conspirators to intentionally and unlawfully kill, that is, to commit murder; [¶] 2. At the time of the agreement, the defendant and the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill; [¶] 3. One of the defendants, both of the defendants, or Pedro Sanchez, Emmanual Avalos, Daniel Samano, or Ricard Villagomez committed at least one of the following overt acts alleged to accomplish the killing: [¶] (1) Conspirators identify target residence, (2) Conspirators arrange for stolen vehicle to use, (3) Conspirators drive by target residence (4) Conspirators gather at [address], (5) Conspirators scouted target residence (6) Conspirators arm themselves with firearm(s); [¶] AND 4. At least one of these overt acts was committed in California." The jury was further instructed, "To decide whether the defendant . . . intended to commit murder, please refer to Instruction 500 which defines that crime." CALCRIM No. 500, as given to the jury, read, "Homicide is the killing of one human being by another. Murder is a type of homicide."

9

Defendant contends his conviction for conspiracy to commit murder must be reversed and a new trial ordered because the trial court failed to inform the jury that they had to find defendant "personally and specifically harbored the intent to kill." The Attorney General argues, and we agree, that CALCRIM No. 536, as given in this case, comports with the Supreme Court's direction in *Cortez*. The jury was required to find that defendant agreed to intentionally kill another human being. CALCRIM No. 500, while perhaps unnecessary, was not as defendant argues "confusing and erroneous as a matter of law." It did not obfuscate what CALCRIM No. 536 clearly required the jury to find in order to convict. Accordingly, defendant's conviction on count 1 must be affirmed.

### 3. *Conspiracy to Participate in a Gang*

Defendant contends his conviction for conspiracy to participate in a street gang must be reversed because there is insufficient evidence that the underlying felony, in this case murder, was completed or attempted. As the Attorney General acknowledges, unlike a traditional conspiracy under section 182, which requires only an overt act in furtherance, section 182.5 which governs gang conspiracies requires that the target offense actually be completed or attempted. (*People v. Johnson* (2013) 57 Cal.4th 250, 263.) In this case, the target felony was murder. Murder did not occur, and the jury was not instructed on attempted murder. Accordingly, as the Attorney General acknowledges, defendant's conviction on count 4 must be reversed.

### 4. *Assembly Bill 333*

Section 186.22 makes it a crime to actively participate in a "criminal street gang," and the statute provides for enhanced punishment when a defendant is convicted of an enumerated felony committed "for the benefit of,

at the direction of, or in association with any criminal street gang." (Former § 186.22, subds. (a), (b)(1).) After reversal of defendant's conviction on count 2, defendant's judgment includes a conviction and two enhancements under this statute.

"The new law made three significant modifications to section 186.22—it amended the definitions of 'criminal street gang' and 'pattern of criminal gang activity' and clarified the evidence needed to establish that an offense benefits, promotes, furthers or assists a criminal street gang. Previously, the statute defined a 'criminal street gang,' as 'any ongoing organization, association, or group of three or more persons . . . whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity.' (Former § 186.22, subd. (f), italics added.) Assembly Bill 333 narrowed the definition to 'an ongoing, organized association or group of three or more persons . . . whose members collectively engage in, or have engaged in, a pattern of criminal gang activity.' (Assem. Bill 333, § 3, revised § 186.22, subd. (f), italics added.) [¶] As for what constitutes a 'pattern of criminal gang activity,' previously the prosecution needed to prove 'only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another.' [Citation.] Assembly Bill 333 made several changes to this definition. First, the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons). (§ 186.22, subd. (e)(1).) Second, the predicate offenses must be proven to have '*commonly* benefited a criminal street gang.' (*Ibid*.) Third, the last predicate offense must have occurred within three years of the date of the currently charged offense. (*Ibid*.) Fourth, the list of qualifying predicate offenses has been reduced. (*Ibid*.) Fifth, the currently charged offense no longer counts as

11

a predicate offense. (§ 186.22, subd. (e)(2).) [¶] Finally, and perhaps most notably, Assembly Bill 333 requires the prosecution to prove that the benefit the gang derives from the predicate and current offenses is 'more than reputational.' (Stats. 2021, ch. 699, § 3 [enacting § 186.22, subd. (g)].) New section 186.22, subdivision (g), provides, 'As used in this chapter, to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.' " (*People v. E.H.* (2022) 75 Cal.App.5th 467.) In summary, section 186.22 now "requires proof of the following additional requirements with respect to predicate offenses: (1) the offenses must have 'commonly benefited a criminal street gang' where the 'common benefit ... is more than reputational'; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense cannot be used as a predicate offense." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345.)

The parties agree, as do we, that Assembly Bill 333's substantive changes apply retroactively to all cases in which the judgment of conviction is not yet final because the changes " 'redefine, to the benefit of defendants, conduct subject to criminal sanctions.' " (*People v. E.H., supra*, 75 Cal.App.5th at p. 478, quoting *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 300-301 and citing *In re Estrada* (1965) 63 Cal.2d 740, 744; *People v. Lopez, supra*, 73 Cal.App.5th at p. 344 [substantive changes in Assembly Bill 333 apply

12

retroactively to all whose judgments are not yet final on the amendments' operative date].) In *People v. E.H., supra,* at page 479, the court held that because Assembly Bill 333 requires findings by the jury on which they were not instructed, and because the instructions given permitted the jury to rely on now inapplicable criteria, reversal is required unless " 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (Quoting *People v. Flood* (1998) 18 Cal.4th 470, 504.)

Defendant contends, and the Attorney General acknowledges, that reversal is required because insufficient evidence was admitted to establish two predicate offenses under the new law. The prosecutor offered evidence of three predicate offenses: the present offense, a 2014 conviction of a known gang member for active participation in a gang based on his shooting at a rival gang member, and a conviction of a second known gang member for the gang-related theft of a stolen vehicle committed on August 15, 2015. As defendant asserts, the prosecutor's reliance on the current offense as a predicate offense is no longer permitted.

With respect to the remaining two offenses, defendant does not dispute that the offenses occurred within the relevant time period and were committed by gang members. Defendant also concedes that the first offense involving the gang member's shooting at a rival gang member "may have been sufficient to show that crime met the common benefit requirement." He argues that the evidence regarding the stolen car offense reflects only individual engagement, not collective engagement, in a pattern of criminal activity as required by the new law.

At trial, defendant stipulated that the auto theft was committed for the benefit of the gang. The Attorney General concedes, however, that defendant's "stipulation to the older, less demanding, definition of benefit

13

cannot be read as a stipulation to the current and more demanding standard." As the Attorney General explains, the stipulation does not say whether defendant in the theft case acted with another gang member, as that was not required at the time of trial. In addition, while the stipulation states that the crime was for the "benefit" of the Norteño gang, at that time "a purely reputational benefit would have been sufficient." Accordingly, the Attorney General agrees that "the case should be remanded to afford the prosecution an opportunity to retry the enhancements and the gang participation conviction in count 5, and meet its new burden of proof pursuant to AB 333's requirements." (See *People v. E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof— where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges."], citing *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72, fn. 2 [statutory amendment retroactively adding additional element to offense allowed prosecution to establish additional element on remand without offending double jeopardy or ex post facto principles].)

    5. *Sentencing Issues*

On count 2 (conspiracy to receive a stolen vehicle) the trial court imposed a term of seven years. On count 3 (unlawful taking and/or driving a stolen vehicle), the court imposed a seven year term, concurrent to count 2 and stayed pursuant to section 654. On appeal, defendant argues the sentence imposed on count 2 should also have been stayed pursuant to section 654 "because the receipt and use of the stolen vehicle was part of the overt acts supporting the conviction for conspiracy to commit murder." Defendant's argument is mooted by our reversal of his conviction on count 2. The reversal does, however, impact his sentence under count 3. With respect

14

to count 3, the stay of his seven-year prison term pursuant to section 654 was based on the sentence imposed on count 2, so that with the vacation of that count the stay under count 3 must be reconsidered. Accordingly, we will remand for resentencing on count 3 to allow the trial court to determine in the first instance whether the stay of execution of the prison term imposed on count 3 should be lifted. (See *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309 [Remand for resentencing ordered where partial reversal of the judgment invalidated the stay that was ordered pursuant to section 654.].)

The reversal of defendant's conviction on count 2 also impacts his presentence custody credits. At sentencing, the trial court awarded defendant 1,386 days of presentence credit against the determinate sentences imposed on counts 2, 3, and 5. As discussed above, the term imposed on count 3 was stayed. The term imposed on count 5 was also stayed. The court awarded "zero" credits against the indeterminate terms imposed on counts 1 and 4. On appeal, defendant argues that "if the conviction in count 2 is reversed and only the indeterminate term imposed in count 1 remains, those 1,386 days credit must be awarded toward that term." This matter must also be addressed on remand.

Finally, defendant contends the matter must be remanded so that he can (1) make an evidentiary record in anticipation of his future youthful offender parole hearing and (2) establish his inability to pay the fees and fines imposed by the trial court. The Attorney General argues that defendant is not entitled to a remand for these purposes, but may request such hearings if the case is remanded for resentencing on other issues. Because the case

15

must be remanded for resentencing, defendant may raise these issues when the matter returns to the trial court.[7]

## Disposition

Defendant's convictions on counts 2, 4 and 5 and the gang enhancements found true on counts 1 and 3 are reversed. The matter is remanded so that the People may, if they so choose, retry count 5 and the enhancements under applicable statutes as amended by Assembly Bill 333, and for resentencing as specified herein. In all other respects the judgment is affirmed.

---

[7] In his petition for rehearing defendant also asked this court to consider "the effect of the recent enactments of Senate Bill No. 567 (2021-2022 Reg. Sess.) and Assembly Bill No. 124 (2021-2022 Reg. Sess.), both effective January 1, 2022, which amended the determinate sentencing law and, among other things, created a presumption in favor of a low prison term where a defendant is under 26 years of age at the time of the offense." The Attorney General concedes that defendant is entitled to the benefit of Assembly Bill No. 124 and Senate Bill No. 567. This issue may properly be raised on remand when defendant is resentenced.

POLLAK, P. J.

WE CONCUR:

BROWN, J.
DESAUTELS, J.[*]

---

[*] Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.